IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JEAN PLOUT,

      Plaintiff,

v.

REN SHIJU, et al.,

      Defendants.

Case No. 26-cv-1134

(Judge Wiegand)

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO VACATE THE PRELIMINARY INJUNCTION AND TO DISMISS THE COMPLAINT**

Defendant Nos. 121 cofolife.com, 138 funiya.com, and 158 lacewave.com (the "Moving Defendants") ask this Court to dissolve a preliminary injunction and dismiss the claims against them—not by disputing that each of them infringed Jean Plout's registered copyright, which they never do, but on the strength of a declaration from their own general manager describing their own company's own internal sales dashboard, unaccompanied by a single transaction log, bank record, shipping manifest, or tax filing that anyone outside their control has ever reviewed. That declaration does not defeat jurisdiction, does not establish misjoinder, does not negate infringement, and does not disturb the irreparable harm this Court already found.

The Moving Defendants are commonly owned and operated by Shenzhen Jijin Technology Co., Ltd. ("Jijin"), which markets goods bearing the Dragonfly Bliss design copyrighted by Jean Plout ("Plout") to consumers across the United States. Their Motion fails at the threshold and on the merits. It fails at the threshold because it asks this Court to disregard the very standard the Moving Defendants themselves recite. They quote the rule correctly — on a Rule 12(b)(2) motion decided on the papers, a court "is required to accept plaintiff's allegations as true, and is to construe disputed facts in favor of the plaintiff," ECF No. 52 at 8–9 (quoting *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 457 (3d Cir. 2003)) — and then ask the Court to do the opposite, crediting their

general manager's account over the Complaint's allegations. The Third Circuit vacated a Schedule A copyright dismissal weeks ago for failing to apply that standard to both personal jurisdiction and joinder. It fails on the merits because the Complaint establishes both the minimum contacts with Pennsylvania that specific jurisdiction requires and, independently, jurisdiction under Fed. R. Civ. P. 4(k)(2). The Motion argues only Pennsylvania-specific contacts while ignoring Rule 4(k)(2), the provision that supplies jurisdiction over a foreign defendant on its contacts with the United States, which the Moving Defendants' own storefronts and own declaration confirm in abundance.

The Motion's joinder theory further ignores both the coordination that the Complaint pleads among all Defendants and their concurrent convergence on Plout's small portfolio of copyrighted works. In all events, misjoinder is not a ground for dismissing the action. *See* Fed. R. Civ. P. 21. If the Court has any concern about joinder, the appropriate remedy is severance of the Moving Defendants into their own case while the non-moving defendants remain in the case, not dismissal. Their irreparable-harm argument recites a general legal standard without confronting the specific findings this Court made when it entered the injunction. At a minimum, any doubt about jurisdiction should be resolved through jurisdictional discovery and completion of the discovery already authorized by the Preliminary Injunction Order, not by dismissing the case.

I.     **THE MOTION DOES NOT COMPLY WITH THIS COURT'S ORDER GOVERNING RULE 12(b) MOTIONS AND SHOULD BE SUMMARILY DENIED.**

On June 2, 2026, this Court entered an Order governing Rule 12(b) motions in this case. ECF No. 10. It directs that "the parties must meet and confer before the filing of such a motion to determine whether any pleading defects are curable by amendment, thereby obviating part or all of the motion," and that "[a] motion to dismiss must be accompanied by a certificate stating that the moving party has made a good faith effort to confer with the nonmovant(s) to determine

whether the identified pleading deficiencies may be cured by amendment." *Id.* The Order states the consequence in terms: "Motions to dismiss that do not contain the required certification will be summarily denied." *Id.* The Motion contains no such certification. It carries a certificate of service and nothing else. ECF No. 52 at 15. Nor did the Moving Defendants ever seek to confer with Plout's counsel before filing. The omission is not a technicality on these facts. Conferral would have narrowed this Motion, because the Motion attacks Pennsylvania-specific contacts while never addressing Fed. R. Civ. P. 4(k)(2) — the independent basis for jurisdiction discussed in Part III.A below, and precisely the sort of matter the Order's meet-and-confer requirement exists to surface before motion practice. The Motion should be denied on this ground alone.

## II. THE COMPLAINT'S ALLEGATIONS ARE ACCEPTED AS TRUE, AND THE THIRD CIRCUIT'S DECISION IN *WOOD* FORECLOSES THE CATEGORICAL DISMISSAL THE MOVING DEFENDANTS SEEK.

On a motion decided without an evidentiary hearing, like the present one, the plaintiff need only make a *prima facie* showing of jurisdiction; the complaint's jurisdictional allegations are accepted as true, and all disputed facts are construed in the plaintiff's favor. *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316–17 (3d Cir. 2007); *Toys "R" Us*, 318 F.3d at 457. That deference is at its height where, as here, the facts relevant to jurisdiction lie within the defendant's exclusive control. *See Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 336 (3d Cir. 2009).

The Third Circuit addressed these principles in a Schedule A copyright case from this District just weeks ago. In *Wood v. Eiazuiks*, No. 25-2340, 2026 WL 1397312 (3d Cir. May 19, 2026) (not precedential), the court vacated the dismissal of a Schedule A copyright complaint against foreign online sellers because the district court "erred by not assessing whether [the plaintiff] sufficiently alleged that Defendants purposefully availed themselves of the forum state." *Id.*, at *4. The district court had "seemingly used an incomplete test," one that "does not reflect

3

that jurisdiction may exist where a defendant deliberately reaches out to do business in the forum state." *Id.* at \*2. The Third Circuit remanded for the district court to examine whether the plaintiff sufficiently alleged that the defendants offered infringing products for sale in Pennsylvania, whether someone purchased infringing products for shipment to Pennsylvania, and whether the claim arises out of or relates to those contacts. *Id.* at \*3. On joinder, the court held that a district court "must provide a reasoned analysis that comports with the requirements of the Rule, and that is based on the specific fact pattern presented," and vacated because the district court "did not explain why any misjoinder could not be cured by severance." *Id.* at \*4 (quoting *Hagan v. Rogers*, 570 F.3d 146, 157 (3d Cir. 2009)). *Wood* thus forecloses the categorical, credit-the-defendant disposition the Motion invites — on both the jurisdictional and the joinder questions.

The Moving Defendants' Motion rests entirely on the Declaration of Xinyu Zou, their own general manager, reviewing hand-selected records maintained by their own company on a platform they alone can access. Zou Decl., ECF No. 53, ¶¶ 5–13. That evidence is insufficient: a self-serving denial drawn from records within the movant's sole control, not yet even produced, does not overcome a plaintiff's well-pleaded allegations; at most, it manufactures a factual dispute, and every such dispute is resolved in Plout's favor at this stage. *Toys "R" Us*, 318 F.3d at 457.

The declaration also sweeps far beyond what its declarant could know. Paragraphs 42 through 53 are a series of categorical denials about the other defendants in this action — that Jijin shares no ownership, accounts, suppliers, inventory, or coordination with any of them, Zou Decl. ¶¶ 45–46, 50; that it "did not enter into any agreement with another defendant," *id.* ¶ 48; that it "did not communicate or coordinate with another defendant," *id.* ¶ 49; and that it "did not participate with any other defendant in a common transaction, coordinated course of conduct, shared business plan, collective enterprise, or common scheme," *id.* ¶ 53. Yet Mr. Zou also swears

that "[b]efore learning of this lawsuit, I did not know the identities of most or all of the other defendants" named in this action. *Id.* ¶ 51. A declarant who does not know who the other defendants are cannot competently swear that his company has no relationship with any of them. Fed. R. Evid. 602. Those paragraphs establish only what Jijin's own records happen to show — which is precisely why the answer is the discovery this Court already ordered, not dismissal.

The Complaint establishes both personal jurisdiction and proper joinder. It alleges that each Moving Defendant purposefully directed its conduct at Pennsylvania and the United States—being willing to accept orders from Pennsylvania addresses, to ship the accused products into Pennsylvania, and to collect Pennsylvania sales tax, and, on information and belief, selling infringing products to consumers in Pennsylvania and across the United States—and that each publicly displayed Plout's copyrighted works to those consumers. ECF No. 1 ¶¶ 3, 31–32, 42–43. It further alleges that the Moving Defendants coordinated their efforts to build a single infringing marketplace on the back of Plout's works. *Id.* ¶¶ 5, 16, 19, 22.

Plout's Complaint also asserts a civil conspiracy claim. Under conspiracy law, contacts are imputed to all members of the conspiracy. *See Ethanol Partners Accredited v. Wiener, Zuckerbrot, Weiss & Brecher*, 635 F. Supp. 15, 16-17 (E.D. Pa. 1985). Taken as true and read in Plout's favor, as they must be, those allegations are enough to establish personal jurisdiction and to sustain joinder. Accordingly, Plout respectfully submits that this Court should deny the Motion.

## III.   THIS COURT HAS PERSONAL JURISDICTION OVER THE MOVING DEFENDANTS

The Moving Defendants argue that Plout cannot establish minimum contacts with Pennsylvania. They are wrong on that score; the Complaint pleads, and their own conduct confirms, contacts directed at Pennsylvania. And in all events, they never mention Rule 4(k)(2), which independently establishes personal jurisdiction where, like here, a foreign defendant is sued

on a federal claim while contending that it is beyond the reach of any single State. Either the Pennsylvania contacts or the nationwide contacts support personal jurisdiction here. To the extent any jurisdictional ambiguity remains, the Court should permit jurisdictional discovery.

A. Rule 4(k)(2) establishes personal jurisdiction because the Moving Defendants' infringing public display is a minimum contact with the United States that independently satisfies the effects test.

Personal jurisdiction is independently proper under Rule 4(k)(2), a federal long-arm that reaches a foreign defendant whose aggregate contacts with the United States are sufficient but who is not subject to jurisdiction in any single State. Fed. R. Civ. P. 4(k)(2); *In re Auto. Refinishing Paint Antitrust Litig.*, 358 F.3d 288, 298 (3d Cir. 2004) (a foreign defendant's contacts are measured "against the United States as a whole"); *BP Chems. Ltd. v. Formosa Chem. & Fibre Corp.*, 229 F.3d 254, 258–59 (3d Cir. 2000). A defendant may defeat Rule 4(k)(2) only by "nam[ing] some other state in which the suit could proceed"; the Moving Defendants name none and disclaim the entire country. *ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 552 (7th Cir. 2001). The only question is whether their contacts with the Nation satisfy due process, and because the relevant sovereign is the United States, the governing limit is the Fifth Amendment, which permits a more flexible jurisdictional inquiry commensurate with the Federal Government's broader sovereign authority. *Fuld v. Palestine Liberation Org.*, 606 U.S. 1, 16 (2025). Judges of this District have applied Rule 4(k)(2) to foreign online sellers just like these. *See POM Grp., Inc. v. Schedule A Defendants*, No. 2:25-cv-1909, 2026 WL 1027266, at *5 (W.D. Pa. Apr. 16, 2026); *Xie v. GUANHE Home Essentials, Inc.*, No. 2:25-cv-00265, 2025 WL 1039233, at *6 (W.D. Pa. Apr. 8, 2025); *Nifty Home Prods., Inc. v. Ladynana US*, No. 22-cv-0994, 2026 WL 1084879, at *4 (W.D. Pa. Apr. 22, 2026).

Nor can the Moving Defendants escape Rule 4(k)(2) by pointing to the three unfulfilled orders directed to a Chicago address. They contend that orders placed by a plaintiff's representative and never fulfilled cannot establish purposeful availment anywhere. ECF No. 52 at 5–6; Zou Decl. ¶¶ 17, 22, 27, 31, 33. Taking them at their word, those orders no more subject them to suit in Illinois than in Pennsylvania, leaving them, on their own account, amenable to suit in no State at all—the very circumstance Rule 4(k)(2) exists to address. Rather than name another available forum, they have disclaimed the entire country, swearing that their records show "no other United States order for any Accused Product." Zou Decl. ¶ 32. Having done so, they cannot resist the federal long-arm that Rule 4(k)(2) supplies.

### i. *The Moving Defendants purposefully availed themselves of the United States market, and Plout's claim arises directly from their infringing public display.*

The Moving Defendants' storefronts are live, English-language, United States-facing businesses: they price every item in U.S. dollars, accept United States consumer-payment methods, and publish a shipping policy that lists the United States first, quotes a fixed U.S. rate, ships by DHL, UPS, and FedEx, and refuses to ship to "China Mainland." (Ference Decl. ¶¶ 8–11 & Ex. B.) They also funnel the proceeds of those sales into a United States bank account—a further, deliberate contact with this country. (Ference Decl. ¶ 16 & Ex. C.) Those are deliberate choices to serve American consumers, and deliberate, forum-directed online commerce is purposeful availment. *O'Connor*, 496 F.3d at 317; *Colur World, LLC v. Supmedic, Inc.*, 801 F. Supp. 3d 524, 535–36 (E.D. Pa. 2025); *NBA Props., Inc. v. HANWJH*, 46 F.4th 614, 624 (7th Cir. 2022) (offering to ship into the forum asserts a willingness and establishes the capacity to do so). The Moving Defendants' own declaration confirms it: they accepted three orders placed from the United States and processed payment through a United States platform. Zou Decl. ¶¶ 5–9, 14–32.

Plout's claim arises directly from that conduct. Specific jurisdiction requires only that the claim "arise out of or relate to" the defendant's forum contacts, *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359, 362 (2021), and the Moving Defendants' suit-related contact is their unlawful public display of Plout's works to U.S. consumers itself an act of infringement regardless of any sale. 17 U.S.C. §§ 106(5), 501(a); *see Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1160 (9th Cir. 2007). And accepted orders count even though the Moving Defendants say they cancelled or never shipped them. *See American Girl, LLC v. Zembrka*, 118 F.4th 271, 280–84 (2d Cir. 2024); *Pit Viper, LLC v. Xian Jiaye Tengda Trading Co.*, No. 23 C 14761, 2024 WL 5039888, at *3–*4 (N.D. Ill. Dec. 10, 2024); *Manchester United Football Club Ltd. v. P'ships & Unincorporated Ass'ns Identified on Schedule A*, No. 24 CV 5692, 2024 WL 5202272, at *3–4 (N.D. Ill. Dec. 26, 2024). Because the contacts exist, the burden shifts to the Moving Defendants to make a "compelling case" that jurisdiction is unreasonable, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985), a burden that foreign sellers who built U.S.-facing stores and drew proceeds from this market cannot carry. *See Fuld*, 606 U.S. at 16; *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 351–54 (4th Cir. 2020).

### ii. The effects test further establishes jurisdiction because the Moving Defendants' infringement is an intentional tort aimed at the U.S. and Pennsylvania.

The *Calder* effects test supplies an independent basis for jurisdiction. *Calder v. Jones*, 465 U.S. 783, 789–90 (1984). In this Circuit, a plaintiff invoking it must show that the defendant (1) committed an intentional tort, (2) the plaintiff felt the brunt of the harm in the forum such that the forum was the focal point of the harm suffered, and (3) the defendant expressly aimed its tortious conduct at the forum such that the forum was the focal point of the tortious activity. *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 265–66 (3d Cir. 1998); *Marten v. Godwin*, 499 F.3d 290, 297 (3d Cir. 2007). The third element is the demanding one: it requires more than a defendant's

8

knowledge that the plaintiff will feel harm in the forum. *Marten*, 499 F.3d at 297. Plout satisfies it, because the Moving Defendants built storefronts that targeted U.S. consumers directly, accepted delivery to U.S. addresses, and quoted state shipping and tax, including from Pennsylvania. *See Hasson v. FullStory, Inc.*, 114 F.4th 181, 193 (3d Cir. 2024).

Federal courts in Pennsylvania have applied the effects test to find specific personal jurisdiction in copyright infringement cases. In *Schork Grp., Inc. v. Choice! Energy Servs., Retail, LP*, No. 20-CV-6507, 2022 WL 2905231, at *6 n.2 (E.D. Pa. July 21, 2022), the defendant was allegedly taking copyrighted material from the plaintiff's publication and inserting it into the defendant's publication without permission. When the plaintiff sued in Pennsylvania, the defendant argued that he had no contacts with Pennsylvania, but the court found personal jurisdiction proper under the *Calder* effects test because copyright infringement is an intentional tort and the plaintiff experienced the effects of that tort in Pennsylvania. *See also Joe Hand Promotions, Inc. v. Shehadeh*, No. CV 18-4119, 2019 WL 2077728, at *5 (E.D. Pa. May 10, 2019) (finding specific personal jurisdiction over an out-of-state defendant in a copyright case under the *Calder* effects test where the defendant "expressly aimed" tortious conduct at Pennsylvania). Federal appellate courts have similarly applied the *Calder* effects test to find jurisdiction proper in similar cases. See *Licciardello v. Lovelady*, 544 F.3d 1280, 1288 (11th Cir. 2008); *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1357–58 (11th Cir. 2013).

Jurisdiction here rests on both the Moving Defendants' contacts with Pennsylvania and, under Rule 4(k)(2), their aggregate contacts with the United States, and the effects test is satisfied under either frame. The Complaint alleges that: (i) the Moving Defendants directed their business activities at consumers in the United States, including Pennsylvania, through their interactive storefronts through which consumers can view the storefronts, communicate with the Moving

9

Defendants about their infringing products, and place orders for, purchase, and receive delivery of those products; (ii) the Moving Defendants offer shipping into the United States and Pennsylvania and calculate, charge, and collect Pennsylvania sales tax on orders placed from Pennsylvania; (iii) the Moving Defendants are concurrently targeting their infringing activities toward, and causing harm to, consumers in the United States and Pennsylvania; (iv) the Moving Defendants are aware of Plout and her copyrights and that their infringement is likely to harm Plout in this country and in Pennsylvania; and (v) each Moving Defendant targets consumers in the United States, including Pennsylvania, and has offered to sell and, on information and belief, has sold and continues to sell infringing products that violate Plout's copyright to those consumers. ECF No. 1 ¶¶ 3, 5, 30, 31–32, 42–43. That infringement was intentional and willful. ECF No. 1 ¶¶ 5, 20, 30.

The Moving Defendants' tortious conduct harms Plout where she markets her works in Pennsylvania and across the United States. Copyright infringement occurs whenever any of the copyright owner's exclusive rights under 17 U.S.C. § 106 are violated, and infringement occurs in the forum when Plout's copyrighted design is displayed there. Cf. *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994) (in the trademark context, "a cause of action for trademark infringement occurs where the passing off occurs"). The Moving Defendants' infringement of Plout's copyright harms her in the U.S. and Pennsylvania market in several ways, including lost revenue, a perceived loss of exclusivity, a diminishment of her brand, downward pressure on the pricing of her originals and licensed reproductions, and increased difficulty licensing her artwork. The Moving Defendants' use of the infringing design thus directly affects Plout's ability to succeed in the marketplace she serves, so she experiences the harmful effects of their tortious conduct in Pennsylvania and in the United States alike—establishing personal

10

jurisdiction under the *Calder* effects test whether the relevant forum is Pennsylvania for specific jurisdiction or, under Rule 4(k)(2), the United States.

B. <u>The Moving Defendants have the minimum contacts with Pennsylvania that specific jurisdiction requires.</u>

Specific jurisdiction requires that a defendant purposefully direct its activities at the forum, that the claim arise out of or relate to those activities, and that jurisdiction comport with fair play. *O'Connor*, 496 F.3d at 317. The Complaint satisfies that test, and at this stage, its allegations are taken as true. Plout alleges that each Moving Defendant "purposefully directed" its infringing activity at Pennsylvania and established minimum contacts by, "among other things," being willing to accept an order from a Pennsylvania address, to ship the product to Pennsylvania, and to collect Pennsylvania sales tax, and that, on information and belief, each Defendant "has sold additional products bearing Plaintiff's copyrighted designs to consumers within Pennsylvania…through the regular course of business." ECF No. 1 ¶¶ 3, 42–43. Those allegations describe deliberate conduct directed at this forum, not the passive operation of a website accessible here, and under *Wood,* they must be analyzed as such rather than rejected out of hand. *Wood*, 2026 WL 1397312, at *2–3.

The controlling question is what the Moving Defendants held themselves out as willing to do, and the Third Circuit has answered it: "[a]n internet-based defendant purposefully avails itself of a forum state by offering goods for sale and shipment to the state's residents." *Wood*, 2026 WL 1397312, at *3 n.4 (citing *Hasson*, 114 F.4th at 193). The court gathered the same rule from its sister circuits, citing with approval *NBA Props.*, 46 F.4th at 624 (foreign seller "unequivocally asserted a willingness to ship goods to Illinois and established the capacity to do so"), and *American Girl*, 118 F.4th at 277–78 (defendant "accepted orders with New York shipping addresses … and accepted payments from a customer with a New York address").

11

Likewise, the Moving Defendants here accepted a Pennsylvania shipping address, quoted shipping to Pennsylvania, and calculated Pennsylvania sales tax. ECF No. 1 ¶ 3; Ference Decl. ¶¶ 8–11 & Ex. B. Nothing in the Zou Declaration denies any of it. Mr. Zou swears that no order was fulfilled or delivered to Pennsylvania (Zou Decl. ¶¶ 11–13, 34–35), but he never says the storefronts refused Pennsylvania addresses, declined to quote Pennsylvania shipping, or would not have filled a Pennsylvania order. He does not say so because the storefronts did the opposite. Under *Wood*, *Hasson*, and *NBA Properties*, that willingness and capacity are the purposeful availment; the fulfillment records the Moving Defendants offer instead go to damages, not to jurisdiction.

The Moving Defendants also displayed Plout's copyrighted works to Pennsylvania consumers on their interactive storefronts—itself an infringing act aimed at this forum, *cf. Perfect 10, Inc.*, 508 F.3d at 1160—and the resulting harm to Plout's exclusivity, licensing, and goodwill is felt here, where she markets the Dragonfly Bliss design. (ECF No. 1 ¶¶ 3, 29.) Each element of specific jurisdiction is therefore satisfied on the face of the Complaint—purposeful direction at Pennsylvania, a claim arising from that conduct, and no unfairness in holding sellers to answer in a forum they deliberately served—and the Moving Defendants' unsupported say-so cannot unsettle it on a motion that must take Plout's allegations as true. Any residual doubt is a reason to order jurisdictional discovery, not to dismiss.

The Moving Defendants' lead authority does not hold what they say it holds. They cite *Nifty Home Products, Inc. v. Ladynana US* for the proposition that "single sales into the forum set up by plaintiff [are] insufficient to establish purposeful availment." ECF No. 52 at 5. *Nifty* decided no such thing. It was an appeal from the denial of motions to set aside default judgments, where the "meritorious defense" prong asks only whether a proffered defense is not "facially unmeritorious." *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987). Applying that

threshold, the Third Circuit held only that the defendants "have made at least a colorable argument that these single transactions, standing alone, were insufficient to demonstrate purposeful availment." *Nifty Home Prods., Inc. v. Ladynana US*, Nos. 23-1332 & 23-2028, 2024 WL 4987245, at *3 (3d Cir. Dec. 5, 2024) (not precedential). A ruling that an argument is colorable enough to reopen a default is not a ruling that the argument is correct.

Moreover, the panel paired its observation with a contrary citation — "but see *NBA Props., Inc. v. HANWJH*, 46 F.4th 614, 624–25 (7th Cir. 2022) (holding that a single sale into an online marketplace was sufficient to constitute purposeful availment)," *id.* — and eighteen months later, in *Wood*, the Third Circuit cited *NBA Properties* approvingly for precisely the offer-to-ship principle Plout invokes here. *Wood*, 2026 WL 1397312, at *3, n.4. And *Nifty* expressly declined to reach Rule 4(k)(2), noting that the district court "merely stated the governing standard… [and] did not apply the rule or make a finding under it." 2024 WL 4987245, at *3 n.3.

What happened on remand completes the picture. On remand, this District held that it had personal jurisdiction over the China-based defendants and rejected the very argument the Moving Defendants press: "the fact that the documented sales related to test buys, that is, purchases made by representatives of Plaintiff, does not bear negatively on the personal jurisdictional analysis." *Nifty*, 2026 WL 1084879, at *5 (Schwab, J.). The court further held that foreign sellers who use online platforms to "generically target sales across the United States rather than sales in any one particular state" are subject to jurisdiction under Rule 4(k)(2), and rejected the contention that Rule 4(k)(2) "simply permits Defendants to pick their forum state." *Id.* at *4.

C. <u>At minimum, the Court should resolve any jurisdictional doubt through jurisdictional discovery and through the completion of the discovery it already ordered—not dismissal.</u>

Even if the Court viewed Plout's showing as needing development, dismissal would be the wrong response. A plaintiff who alleges jurisdictional facts "with reasonable particularity" is

13

entitled to jurisdictional discovery unless the claim is "clearly frivolous," and that entitlement is strongest where the defendant is a corporation holding the relevant records. *Toys "R" Us*, 318 F.3d at 456; *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 107 F.3d 1026, 1042 (3d Cir. 1997); *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992). Plout's allegations satisfy that standard: she has identified, with particularity, the Moving Defendants' willingness to accept and ship U.S. and Pennsylvania orders, collection of Pennsylvania sales tax, and their display and sale of the infringing works to consumers here, and pleaded that each made such sales in the regular course of business. ECF No. 1 ¶¶ 3, 42–43. The point is not that discovery will prove every fact for Plout; it is that Plout should not be forced to accept the Moving Defendants' say-so on matters that have not been tested. The discovery Plout seeks is targeted: the Moving Defendants' United States and Pennsylvania sales, shipments, and revenue; the identity, ownership, and aliases behind the storefronts and any related entities; and the U.S. bank and payment accounts through which they collect their proceeds. (Ference Decl. ¶¶ 16–17 & Ex. C.)

This Court has already ordered expedited discovery as part of the preliminary injunction order. Plout served that court-ordered discovery on June 5, 2026, by publishing it to the case-specific website through which the Moving Defendants have been served and may access every filing in this action. (Ference Decl. ¶ 5 & Ex. A.) Their responses came due fourteen days later, and they still have not responded. A curated declaration is not a substitute for the production this Court already required; the remedy for that non-compliance is to hold the Moving Defendants to it, not to reward their withholding with dismissal. Their suggestion that Plout's allegations may warrant Rule 11 sanctions, ECF No. 52 at 9–10, has it backward: a party confident that discovery will vindicate it should welcome that discovery, not invoke Rule 11 to avoid it.

## IV. THE MOVING DEFENDANTS ARE PROPERLY JOINED; IF THEY ARE NOT, THE REMEDY IS SEVERANCE, NOT DISMISSAL.

Rule 20(a)(2) permits joinder where the claims arise out of the same transaction, occurrence, or series of transactions or occurrences and share a common question of law or fact—a standard measured by a flexible, liberally construed "logical relationship" test, *Transamerica Occidental Life Ins. Co. v. Aviation Office of Am., Inc.*, 292 F.3d 384, 390 (3d Cir. 2002), and applied, at this stage, by accepting the Complaint's allegations as true and drawing all reasonable inferences in Plout's favor. *Hagan*, 570 F.3d at 153. Courts also consider whether joinder will advance the just, speedy, and inexpensive resolution of the matter. *Doggie Dental, Inc. v. Cdoffice*, No. 2:21-CV-00271, 2021 WL 5411432, at *3 (W.D. Pa. Sept. 7, 2021). If the Court were to find joinder lacking, misjoinder still would not be a ground for dismissing the action; Rule 21 authorizes the Court to add or drop a party, or to sever a claim, on just terms. Fed. R. Civ. P. 21.

Where joinder is lacking, courts routinely sever instead of dismissing because dismissal would work gratuitous injury to the plaintiff and dissolve injunctive relief already entered. *See In re Diet Drugs*, 325 F. Supp. 2d 540, 541 (E.D. Pa. 2004) (severing sixty-two misjoined parties, each assigned its own civil action number, rather than dismissing); *Directv, Inc. v. Figler*, No. 04-cv-773, 2005 WL 8174432 (W.D. Pa. 2005) (severing multiple defendants into separate actions); *see also Roadget Bus. Pte. Ltd. v. P'ships*, 735 F. Supp. 3d 981, 987 (N.D. Ill. 2024); *Laika, LLC v. P'ships*, No. 25 C 10829, 2026 WL 1353809, at *2 & n.2 (N.D. Ill. May 15, 2026) (holding "dismissal as a remedy here is inappropriate").

A. The claims against all Defendants arise from the same series of occurrences and share common questions of law and fact.

Plout's Complaint alleges that: "Defendants have cooperated, communicated, shared information, and coordinated their efforts in order to create an infringing marketplace operating in

15

parallel to the legitimate marketplace of Plaintiff and third parties authorized to sell products embodying Plaintiff's copyrighted works."; "Defendants are an interrelated group of infringers working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Infringing Products."; and "Defendants use aliases to avoid liability by going to great lengths to conceal both their identities as well as the full scope and interworking of their illegal network." (ECF No. 1 at ¶ 4, 18, 35.) These allegations mirror those that courts in this District have repeatedly found to support joinder. *See, e.g., POM Grp., Inc. v. Schedule A Defendants*, No. 2:25-cv-1909, 2026 WL 1027266, at *6–*7 (W.D. Pa. Apr. 16, 2026); *Doggie Dental*, 2021 WL 5411432, at *5; *Audit v. Decor*, No. 25-cv-1433, 2026 WL 916206 (W.D. Pa. Mar. 5, 2026).

These allegations are not abstract; they describe the documented *modus operandi* of these networks, in which a single foreign operator splinters one business into many separately named storefronts selling goods drawn from a common source. (Ference Decl. ¶¶ 12–15.) The Moving Defendants fit that pattern: three storefronts held out as independent that are, by their own general manager's account, a single company—Shenzhen Jijin Technology Co.—whose payment account is registered under email addresses bearing other website names, indicating a footprint beyond these three sites. (Zou Decl. ¶¶ 3–7; Ference Decl. ¶¶ 16–17 & Ex. C.) Whether these Moving Defendants share ownership, suppliers, or coordination with others named on Schedule A is peculiarly within their control and will surface only through the discovery this Court already ordered, so severing or dismissing before that discovery would be premature.

Plout's complaint provides further support for joinder because it includes a count for civil conspiracy. Plout alleges that the defendants "knowingly and voluntarily entered into a scheme and agreement" to engage in "a concerted and collaborated effort" to distribute, market, and sell products bearing Plout's copyrighted designs, that each defendant "understood and accepted the

foregoing scheme and agreed to do its respective part," and that each acted in furtherance of that common objective. (ECF No. 1 at ¶¶ 51–56.) An alleged agreement to pursue a shared unlawful objective is the paradigmatic "series of transactions or occurrences," and it supplies common questions of its own—the existence, scope, and membership of the conspiracy and each defendant's role. Whether Plout will ultimately prove the conspiracy is a merits question; whether she has alleged it is a pleading question, and on this record, the allegations are taken as true.

Joinder is, in any event, proper under Rule 20, which permits joinder of claims arising from the same "transaction, occurrence, or series of transactions or occurrences," and courts read "occurrence" disjunctively and more broadly than "transaction." *Bose Corp. v. Partnerships & Unincorporated Ass'ns Identified on Schedule "A,"* 334 F.R.D. 511, 516–17 (N.D. Ill. 2020). This is not a case in which unrelated sellers each infringe different artists who hold their own separate copyrights; every defendant, including the Moving Defendants, has converged on the same artist and the same small portfolio of copyrighted works, for the same reason: her works are profitable to copy, display, and distribute. The defendants' infringement of one artist's catalog is evidence of the common scheme, not of its absence.

The decisions the Moving Defendants invoke are not otherwise; each found joinder wanting only where the complaint alleged no connection among the defendants beyond selling similar goods on the same platform. (ECF No. 52 at 7–8 (citing, *inter alia*, *Forcel Media Ltd. v. DecYI*, No. 2:25-cv-750, 2025 WL 1665586 (W.D. Pa. June 12, 2025)).) This Complaint alleges coordination and a convergent scheme common to all defendants, and *Wood* requires that those allegations be engaged, not brushed aside, holding that a district court must ground its Rule 20 determination on the particulars of each case and must explain its reasoning in its opinion, including why misjoinder could not be cured by severance. 2026 WL 1397312, at *4. There is a

17

further reason *Forcel Media* cannot carry the Motion. The Moving Defendants urge this Court to follow it while "expressly relying on Judge Ranjan's holding" there. ECF No. 52 at 8. But *Forcel Media* was decided in June 2025 under the same Schedule A standing order that the Third Circuit reviewed and vacated a dismissal under in *Wood* eleven months later. Having identified the governing law, the *Wood* panel added that "the District Court may wish to review its Standing Order." *Wood*, 2026 WL 1397312, at *3, n.5. In sum, the Complaint allegations taken as true independently satisfy Rule 20(a)(2). The record confirms that Plout's copyright claim arises from the same infringing occurrence or series of occurrences among the defendants, and common questions of law and fact are present. Accordingly, joinder was proper in this case.

B.  Joinder of these Defendants serves fairness and judicial economy.

Because every claim in this action turns on the same artist, the same registrations, and the same questions of ownership, validity, willfulness, and remedy, a single action lets the Court resolve those issues once rather than hundreds of times—the very duplication the logical-relationship test exists to avoid. *Transamerica*, 292 F.3d at 390; Fed. R. Civ. P. 1. Requiring individual artists like Plout to file, serve, and fund hundreds of separate suits against anonymous foreign infringers would flood the docket with single-defendant cases that in practice resolve no differently, all to vindicate the same handful of copyrights. *See Bose Corp.*, 334 F.R.D. at 517 n.6. Joinder, by contrast, works no prejudice on the Moving Defendants, who answer in a single forum on common questions and retain every ordinary means to test their inclusion; courts routinely permit joinder on the pleadings and defer any efficiency determination, observing that they will "revisit th[e] decision" should later discovery show joinder inappropriate. *Maier v. The P'ships*, No. 25-cv-07534, ECF No. 58 (N.D. Ill. Mar. 25, 2026); *Hein v. The P'ships*, No. 25-cv-12608,

18

ECF Nos. 38, 39 (N.D. Ill. Mar. 4, 2026). The interests of justice and judicial economy accordingly support joinder under Rule 20.

C. If any Defendant is misjoined, the remedy is severance, not dismissal.

If the Court finds the Moving Defendants misjoined, the appropriate remedy is severance, not dismissal. Rule 21 authorizes the Court to add or drop a party, or to sever any claim, "on just terms," and permits dropping a party only where doing so will not prejudice a substantial right. Fed. R. Civ. P. 21; *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845–47 (3d Cir. 2006). Severance, not dismissal, is the course that avoids that prejudice: dismissal would dissolve the Preliminary Injunction already entered and strip Plout of the court-ordered discovery she has yet to receive, while severance preserves both. *See Laika, LLC v. P'ships & Unincorporated Ass'ns Identified on Schedule A*, No. 25 C 10829, 2026 WL 1353809, at *1, *6 (N.D. Ill. May 15, 2026) (dismissal "inappropriate" where it would lift an injunction and inflict "gratuitous harm"). Thus, if the Court reaches the question, the proper course is to sever the Moving Defendants into a separate action, carrying the relevant filings over so that the existing record and this Court's rulings remain intact.

V.   **THE PRELIMINARY INJUNCTION SHOULD REMAIN IN PLACE.**

A preliminary injunction requires a likelihood of success on the merits, a likelihood of irreparable harm, a balance of equities favoring the movant, and consistency with the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The Moving Defendants' only challenge to likelihood of success is derivative: they contend Plout cannot succeed because, in their view, this Court lacks jurisdiction, ECF No. 52 at 11, but they do not dispute that Plout is likely to prevail on the merits of infringement. Their sole freestanding attack is on irreparable harm. With jurisdiction secure, the likelihood-of-success factor holds, and the balance of equities and the public interest remain unrebutted.

19

The Moving Defendants' irreparable-harm argument fails. They cite *eBay* and *TD Bank* for the proposition that irreparable harm cannot be presumed from infringement alone. *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 392–93 (2006); *TD Bank N.A. v. Hill*, 928 F.3d 259, 279–81 (3d Cir. 2019). But this Court did not presume harm—it found it: the erosion of Plout's exclusivity, the dilution of the market for her design, and the loss of control over her reputation and goodwill as knock-offs are marketed alongside the genuine work. (ECF No. 1 ¶¶ 5, 20, 30.) That loss of control over reputation and goodwill is itself an irreparable injury that damages cannot repair. *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 195–96 (3d Cir. 1990). The Moving Defendants' focus on the absence of a completed Pennsylvania sale misapprehends the injury: the harm is the public display and marketing of the infringing design, not a single lost transaction, and their declaration, even fully credited, speaks only to whether three orders were fulfilled. Money damages are no adequate substitute in any event, because these foreign sellers conceal their identities, sales, and assets and move funds offshore. ECF No. 1 ¶¶ 36, 38, 40–41.

The balance of equities and the public interest are unrebutted and favor Plout: the Moving Defendants have no legitimate interest in trading on Plout's copyrighted work, while the public has a substantial interest in enforcing the copyright laws and in not being deceived by knock-offs passed off as genuine. The injunction restrains only the unauthorized use of Plout's work and the concealment of the Moving Defendants' sales records, leaving them free to conduct any lawful business. Vacating it now—before they have complied with the discovery this Court ordered—would reward the very delay and selective disclosure these injunctions exist to prevent.

## CONCLUSION

For the reasons set out above, this Court should deny the Moving Defendants' Motion.

Respectfully submitted,

Dated:  July 28, 2026

/s/ Stanley D. Ference III
Stanley D. Ference III
Pa. ID No. 59899
courts@ferencelaw.com

FERENCE & ASSOCIATES LLC
409 Broad Street
Pittsburgh, Pennsylvania 15143
(412) 741-8400 – Telephone
(412) 741-9292 – Facsimile

Attorneys for Plaintiff

21